UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOHN MICHAEL SNIDER, | ) |
| *Plaintiff*, | ) ) ) ) ) Case No. 3:22-cv-399 |
| v. | ) ) Judge Curtis L. Collier |
| JOSEPH ROBINETTE BIDEN, *in his official capacity as President of the United States*, | ) Magistrate Judge Jill E. McCook ) ) ) ) ) |
| *Defendant*. | ) |

### **M E M O R A N D U M**

Before the Court is Defendant's motion to dismiss the complaint (Doc. 1), with an accompanying memorandum, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as well as Local Rule 7.1 (Docs. 9–10.) Plaintiff responded in opposition (Doc. 13), and Defendant replied (Doc. 14.) The matter is now ripe for review. For the following reasons, this Court shall **GRANT** Defendant's motion to dismiss.

### I. BACKGROUND

Plaintiff is John Michael Snider, a U.S. citizen and resident of Clinton, Tennessee, representing himself *pro se* in this litigation.

Defendant is President Joseph Robinette Biden, Jr., in his official capacity as President of the United States.

Plaintiff is seeking declaratory and injunctive relief holding that Defendant exceeded his constitutional and statutory authority with his climate change policies. (Doc. 1.) Plaintiff does not show he is harmed by Defendant's actions beyond that he finds them unwise and unlawful.

## II. STANDARD OF REVIEW

When a defendant moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007). A Rule 12(b)(1) motion may present either a facial attack, which questions the sufficiency of the pleadings, or a factual attack, which challenges the factual existence of subject-matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "When reviewing a facial attack, a district court takes the allegations in the complaint as true," though conclusory allegations and legal conclusions will not prevent dismissal. *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007). Filings by *pro se* litigants are liberally construed and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III. ANALYSIS

Under the Constitution of the United States, a litigant seeking to have claims heard in federal court must meet Article III's requirements for an active and justiciable case or controversy. *See Warth v. Seldin,* 422 U.S. 490, 498 (1975) (standing is "the threshold question in every federal case."). This requirement must be met before the merits of any claim may be addressed, and it applies whether the relief the litigant is seeking is monetary, injunctive, or declaratory, and whether the relief sought is prospective or retrospective in nature. *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650, (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, (2016) ("At the pleadings

2

stage, a plaintiff 'must "clearly . . . allege facts demonstrating" each element.'") (quoting *Warth*, 422 U.S. at 518).

The federal Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201. The Declaratory Judgment Act is not a substitute for standing as required under Article III. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) ("The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process.").

Requiring standing to sue under Article III ensures that federal courts only exercise the judicial power granted to them in the Constitution: the power to decide cases or controversies. *Doe v. Chao*, 540 U.S. 614, 625 (2004); *Warth*, 422 U.S. at 498 ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). The Supreme Court of the United States has determined the "irreducible constitutional minimum of standing" to consist of the following three requirements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted; alterations in original).

3

Thus, a plaintiff seeking to have claims heard in federal court must first show he or she has suffered, or imminently will suffer, an injury in fact, to have standing. *Lujan*, 504 U.S. 555.

Litigants may not approach courts to resolve legal questions that are purely abstract, hypothetical, or academic in nature. This is in line with Article III's prohibition of advisory opinions in federal courts; courts do not spend judicial resources to resolve questions unless it will resolve a live controversy between the parties immediately before them. Christian R. Burset, *Advisory Opinions and the Problem of Legal Authority*, 74 VAND. L. REV. 621 (2021) ("The prohibition against advisory opinions is fundamental to our understanding of federal judicial power[.]"). Rather,

> at an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge*, 454 U.S. at 472 (citations omitted).

Nor may litigants use the courts as a method for imposing policy preferences in disputes in which they lack a personal stake. Courts are ill-suited to address generalized grievances about the wisdom of particular policies. *Valley Forge*, 454 U.S. at 471 ("The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals […] 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy.'") (citing *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892). The legislature and the executive, as politically accountable branches, are more suited to resolve these issues. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408–09 (2013) ("The law of Article III standing,

4

which is built on separation of powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches.")

For these reasons, the Supreme Court has consistently refused to entertain suits based on "taxpayer standing" in which a citizen seeks to use status as a taxpayer as a basis for an injury to create standing.[1] *See Mass. v. Mellon*, 262 U.S. 447 (1923) ("We have no power *per se* to review and annul acts of Congress on the ground that they are unconstitutional. The question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act."); *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 222 (1974) ("To permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature, and open the Judiciary to an arguable charge of providing 'government by injunction.'"); *see also Lance v. Coffman*, 549 U.S. 437, 441–42 (2007) ("The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.").

A. **Concrete and Particularized Harm**

The first requirement of an injury in fact is that the injury is sufficiently concrete and particularized. *Lujan*, 504 U.S. 555. Concreteness deals with the requirement that the injury meets a particular threshold for harm. *Id.* Particularization means the injury must be harmful to the individual filing the suit. *Id.* Both elements must be met: "the injury-in-fact requirement requires

---

[1] The main exception to the prohibition on taxpayer standing is in Establishment Clause cases, which does not apply here. *See Flast v. Cohen*, 392 U.S. 83 (1968).

5

a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (emphasis in original) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 80–81).

In this case, Plaintiff has not demonstrated that the alleged harm is either concrete or particularized. Plaintiff cannot show he has suffered any concrete injury whatsoever. He presents assertions to bolster his argument that Defendant's policies are illegitimate. However, even if he shows a policy is unwise, that is not enough, as there is no invasion of a legally protected interest by a mere policy disagreement. *See Lujan*, 504 U.S. at 560. Additionally, the harm, if there is any, is not particularized. Plaintiff does not attempt to show he is uniquely harmed by the policy in any way. Rather, his complaints are generalized grievances against the government like those commonly seen in citizen suits that seek to deploy "taxpayer standing." *See Mellon*, 262 U.S. 447. He in no way shows he is particularly harmed by the policies.

## B. Actual or Imminent Harm

The second requirement for an injury in fact is that the harm has actually manifested or is imminently manifesting. The harm complained of must be "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. Additionally, the harm must affect the plaintiff seeking federal jurisdiction; a plaintiff cannot normally assert standing on behalf of another entity or for an abstract form of harm. *Sierra Club v. Morton,* 405 U.S. 727, 734 (1972) ("The 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.").

In *Lujan*, the plaintiffs were multiple organizations and their members dedicated to wildlife conservation and other environmental causes. 504 U.S. at 560. The plaintiffs sued to challenge a new policy in the Department of the Interior that they alleged would have adverse effects on the

environment. *Id.* The plaintiffs premised much of their standing argument on the basis that individual members, who were wildlife and nature enthusiasts, would lose enjoyment of certain natural environments they had previously visited and hoped to visit in the future. The Court held this harm was not concrete enough, as it relied too much on speculation as to whether the feared harms would occur, as well as whether the plaintiffs would even engage in visits to the locations in the future. *Id.* at 567 ("It goes beyond the limit, however, and into pure speculation and fantasy, to say that anyone who observes or works with an endangered species, anywhere in the world, is appreciably harmed by a single project affecting some portion of that species with which he has no more specific connection.").

In this case, Plaintiff has not demonstrated that he has suffered any harm, or even that harm is likely from Defendant's actions. Plaintiff's claims, even if accepted as true, do not show that a harm is "imminent." Plaintiff alleges broad harms to the country as a whole, such as risks to farming which would harm food production and other agricultural commodities. (Doc. 1 ¶ 3.) Even more so than in *Lujan*, Plaintiffs' feared harms are speculation at best, with no actual allegation that there will be "imminent" negative consequences to Plaintiff.

Because all three elements are required for standing, and Plaintiff lacks injury in fact, this Court need not do more analysis. Plaintiff lacks standing.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss (Doc. 9) and **DISMISS** this action.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**